Harrington v. Michael J. Simmons James Earhardt, Debtor Appellant Michael Simmons Michael Simmons was a debtor, as the record states, and this is a summary judgment denial of discharge. So it's reviewed de novo, with no deference to the lower court. And all facts are taken in the light that was favorable to Mr. Simmons, the non-moving party. And the facts for the purpose of this discussion are that Mr. Simmons was unable to get any documentation, did not create any documentation. And therefore, he provided the U.S. Trustee's Office with all documentation he could get or create it. And there wasn't much of it. For the record, Mr. Simmons was also a dupe, a patsy, of an individual named Kai Kuntz. As the record shows, Mr. Simmons was the title owner of 27 pieces of property from 2006 to 2007. By 2010, all of them but five had gone to foreclosure or short sale, leaving a deficiency of over $3 million. The issue was, well, where's the records for these things? And as Mr. Simmons says in his affidavit and in his 2004 examination deposition taken by the U.S. Trustee's Office, I don't have any. I didn't know what was going on. I was literally misused by Mr. Kuntz and his comrades. But what's your argument for saying that patsies don't have to keep records, i.e., they don't have an affirmative obligation to figure out what's going on and document it? That's the exact question that needs to be viewed at trial, Your Honor. Mr. Simmons, my office has asserted from the beginning, is not sophisticated by any means, quite the opposite, that he's somewhat mentally deficient. You put Mr. Simmons in the courtroom and I say this with respect. Wait, where does it say that in the record? What it says in the record is that he's a high school graduate with some college education. He had a year and a half of college education and dropped out. Yeah. But where is there anything about mental deficiency in the record? What it states in the record and in his transcript of the 2004 exam is that Mr. Simmons, as he states, was duped, manipulated, and misused. Yeah, I understand. That's his claim. That's different than being mentally deficient. That is true by definition, Your Honor. But for purpose of being denied a discharge, which is the death penalty of the Bankruptcy Code, it is giving high defense to a debtor to give him a fresh start. But go back to Justice Souter's question. Yes. All right? He's got an obligation under 727A3 to keep and preserve records, right? There may be justification for not doing so, but the justification has to be objectively reasonable. Here there are thousands of dollars of rents deposited in accounts in his name from what appears in the record. The title to the properties is in his name. The mortgages are in his name. Yes. And so what's his justification for not keeping records? I was duped? That's not a justification. That's a conclusion. Reasonable under the circumstances is the key element here. And what the facts are, not thousands of dollars put in accounts in his name. As the record shows us, he did not collect the rents. He did not manage the properties. The records that the trustee's office has was his name was in the mortgage. His name was on the deeds. As the record also says, these were properties that Mr. Kuntz and his crew put in front of Mr. Simmons to sign. He was a front man for the organization because he was easy manipulated and weak-willed. You can't get documents that you did not create or make. Oh, sure you can. If the accounts and the mortgages are in your name, all you have to do is ask the bank for them. And the mortgages are. There's no question of the mortgages and the deeds being in the record. I mean, those were given to trustees. But the status of the accounts, payment information, etc., that's all available to him. As long as the accounts are in his name, which is what the record shows. The record shows that there was one or two accounts in his personal name, but the record does not show that the rents were funneled through those accounts. Rent rolls, income statements, his own tax returns show huge losses because he did not get income, did not maintain the finances, nor did he run the bank accounts. If we had bank accounts in his name, we easily would have procured them and give them to the U.S. trustee's office. But that's the issue. The bank accounts were not in his name, except for one or two personal accounts for his own living expenses. The deeds, they have that. The mortgages, they have that. The things that are not given, which is the basis for discharge, is the rent rolls and what happened to the income. But as the debtor states, he was not involved in any manner or form or fashion. It was manipulated. That was a good question for this court, manipulated versus mental deficiency. We don't say mental deficiency because we have not put in the record any documentation or medical record and so on. But to get to summary judgment, the question is, manipulation, how severe was it? Was he given access to? Was he even put in fear of his own personal safety? These are questions that when you put Mr. Simmons in the stand, Kai quenched and questioned them. Then you can deny a discharge if it is merited. But to deny a discharge when the facts for the record are that he couldn't get the records, had no access to the records, did not manage the accounts, and was duped. I'm going to quote Judge Hoffman from the bankers' court in his key statement. He goes, I am not based on my decision on Mr. Simmons' credibility or lack thereof. Taking Mr. Simmons at his word that he gave the trustee all the records he had, or could get his hands on, there is merely a patsy from Mr. Kuntz. His failure to have kept or maintained records that would establish a clear picture of his financial status prior to and on the day of his bankruptcy filing remains unjustifiable under the circumstances. And let me continue quickly. He then has a good line, which says, the bankers' court states its good opinion that the appellant's choice to act as Charlie McCarthy to Mr. Kuntz's Edgar Bergen no more justifies the inability to account for the operation of real estate he owned and losses he claims to have incurred than it would excuse his failure to comply with the municipal health codes imposed upon him as a landlord. That's apples or oranges. Municipal health code is clear. The building is taken care of, or you lose it, or you get sanctioned. In this case, it's on the circumstances. You don't keep the water in the building, you can be shut down. But when you say you couldn't get documents because you had no access to them, couldn't get them, and didn't create them, how can you deny a discharge without the ability to go on the stand and take evidence, question the individual, see his facial expressions, see Mr. Kuntz's facial expressions? Could your client in the adversary proceeding have subpoenaed as a witness the individual whom he claims manipulated him and have subpoenaed that individual's record? There's no doubt that if we go to an adversary proceeding, we can force Mr. Kuntz to come to trial and testify. Our communications with Mr. Kuntz were he was not responsive to us whatsoever. We did not think it was necessary, nor do I think it is. You may not be responsive to your letters or phone calls, but I presume you could have subpoenaed him. Sure, you can subpoena Mr. Kuntz. And you didn't. And I don't think it was necessary. And the reason is because if you're going to trial and we need to overcome the standard in front of Judge Hoffman, you bring him in and testify. But for summary judgment purposes, with the light most favorable to Mr. Simmons, there's more than enough evidence on the record to say, now you get your day in court. Because if we don't, we have a liability standard in the First Circuit which says, debtor can't get records, didn't create them, had no access to them, and was duped. If those are your facts. Thank you, counsel. That's enough. You're denied a discharge. Ms. Sakata. May it please the Court, Ms. Sakata for the United States Trustee. Good morning, Your Honors. You'll have to speak up. Okay. Mr. Simmons is seeking a discharge of his debts in bankruptcy. But to do so, to earn a discharge, a debtor has to comply with certain requirements of the Code, which include the full disclosure of his financial condition. Under the Code, he has to show that he kept books and records from which his business transactions and financial condition can be ascertained, and he has to provide a satisfactory explanation for the loss of his assets. And as guided by the Bankruptcy Appellate Panel of this Court, it's clear that for an explanation to be satisfactory, it has to be corroborated by documents in such a way as to eliminate any need for speculation as to what happened to those assets. These bookkeeping requirements are important because they help to protect the integrity of the bankruptcy system. Without these requirements, it's simply too easy for assets to disappear from the debtor's possessions before he files for bankruptcy. It's too easy for him to simply conceal them and then not reflect their existence in his schedules. And the Code doesn't impose a burden on an objecting party to prove that he has these assets. It puts the burden on the debtor to verify his account of his financial condition with documentary evidence. But surely there are circumstances where a debtor can be excused for a failure to keep and preserve records. Yes. And so what the debtor says in this case is that the Code provides for justification for failure to keep and preserve records. And I've offered justification because I've alleged that I was duped and manipulated. That's essentially what his argument is. That is what his argument is. And what's wrong with that? Because on the standard for summary judgment, for him to survive summary judgment, because the United States trustee met its initial burden to show that he did not keep adequate records and books, the burden shifted back to him to prove justification, to show that there is a genuine issue of material fact that he was somehow unable to keep these records. And he did not meet this burden of proof because he needed to show, under precedent from this Court and the Supreme Court, he needed to show substantively probative evidence of the issue material to his argument. May I interrupt you? Yes. If in this case he had filed an affidavit saying, I have written, I have called the individual who has duped me and who I have reason to believe has the records, and I can get no response from him, but if his records can be subpoenaed, as in the primary bankruptcy proceeding, I have reason to believe that they will show the very facts that you say I should produce but which I cannot produce now, would that affidavit suffice to demonstrate a genuine issue of material fact that would have stood in the way of the summary judgment? I'm not sure, Your Honor, because that's not what the affidavit actually alleged. Well, I know it didn't allege that. I'm saying if it did allege that, would summary judgment nonetheless have been appropriate saying, in effect, too bad? Well, he had other ways of also proving this. He could have requested a 2004 examination, which is essentially a deposition of Clycombe's through similar means, by subpoenaing him essentially for a deposition, and he didn't do so. Could he have done that in the bankruptcy summary judgment proceeding? He could have done that before, yes. I mean, that's essentially what we did. We requested an examination of Mr. Simmons and received his deposition testimony and submitted it on summary judgment. So you are arguing that he had an alternative to simply saying, I was duped, I don't know. Yes, Your Honor. There were ways he could have gone about finding out that could have been brought before the court on summary judgment. Yes, Your Honor. But also he could have, in the argument before the bankruptcy court, Counselor Mr. Simmons noted that he had seen e-mails between Mr. Simmons and his business associate, Clycombe. If there, in fact, had been e-mail traffic or correspondence between Mr. Simmons and his property managers or Mr. Simmons and his business associate, he could have submitted those as exhibits to testify, to show that he had attempted and failed to try and get records requested by the United States trustee. He did not do so. In fact, the record actually is devoid of any support for the statement in his brief that he had no involvement whatsoever with the management of the property and that he could not get access to records. Because in his deposition testimony, he actually testified that he was able to get rent rolls for some of the properties when he purchased them. He testified that he was able to get, from time to time, bank statements and quarterly reports from his property managers reflecting what rent had been collected. He also testified that he, from time to time, was given the rental proceeds with a statement of expenses that he needed to pay from those proceeds. In addition, he testified there were at least 10 instances in which he evicted tenants for failure to pay his rent. So clearly, he was being kept apprised by his property managers as to their rent collection activities and was given either records or information necessary to carry out those eviction procedures. During his deposition testimony, Mr. Simmons listed, from memory, all 27 properties that he owned with details about their street address, their financial status, and other physical properties. This is not the knowledge of somebody who simply signed on a dotted line. This is knowledge of somebody who is actively interested in his investment properties. Even his affidavit has no specific reference to an attempt that was rejected to get the records. And his statement that he said he did not handle the properties does not actually state that he had no involvement whatsoever with the properties. Nothing in the affidavit or the evidence supports his argument in his brief that there was no possible way that he could have accessed these documents. Thank you, Your Honor. If Your Honor still have any other questions, then in that case, we simply It's a good lesson to sit down if the court has no questions and you're at the end. The issue appears to me was enough done to show the court that he could not get them. But at the same time, the record, as my sister has stated, is not correct. If you look at the record, he did not actively get involved in eight evictions and also 27 units over four years, 80 evictions, not active involvement. The record does not show active involvement in this property. It does not show management. And the record also does show that many documents were given to the trustee's office. I believe Judge Hoffman says boxes of them. This shows that he made every effort but could not get the things we're talking about. I don't understand what you mean by every effort. I mean, he could have taken a 2004 examination of Coons. I don't want to misstate procedure, but Mr. Coons is not a debtor himself. We would have had to ask the court. Yeah, for permission. Did you ever do that? No. And the reason is this. This is a summary judgment stage. It's not the adversary proceeding itself. No, no. But summary judgment is routinely postponed if parties think that they need discovery in order to forestall summary judgment. That's the order of litigation. But what this is showing, that you would have to actually affirm assuming you could get that help from Mr. Coons, is that it supports what we're saying, that Mr. Simmons was, and that's what in light and most faith, and even Judge Hoffman says for the record, Mr. Simmons was a dupe. And as dupe says in Marion Webster, Patsy, under Marion Webster, says the victim. The point is, if this ruling stands from Judge Hoffman and the BAP, it sets what I consider a very dangerous precedent, that if a debtor could not get, could not collect, and was a Patsy for a dupe, then he's denied summary judgment as a strict liability matter, denied discharge as a strict liability matter, because he could not get them and didn't show how he could not get them. I think it's a very dangerous line. Thank you. Thank you, Your Honors.